IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In Re: ) | Chapter 7 |
| ) | |
| THOMAS A. PERTO, JR., ) | Case No. 10 B 30264 |
| ) | |
| _____Debtor._____ ) | |
| JAMES L. NELSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. Pro. No. 10 A 01685 |
| ) | |
| THOMAS A. PERTO, JR., ) | |
| ) | |
| Defendant. ) | Hon. Susan Pierson Sonderby |

## MEMORANDUM OPINION

This cause comes to be heard on the Motion of the plaintiff James L. Nelson ("Nelson") for Summary Judgment on his adversary complaint against the Debtor, Thomas A. Perto, Jr. ("Debtor") for determination of nondischargeability pursuant to section 523(a)(2) of the Bankruptcy Code. For the reasons stated, the court will enter an order denying the motion.

**Jurisdiction and Venue**

This court has jurisdiction over this core proceeding. 28 U.S.C. §§ 1334(b), 157(a), 157(b)(2)(I); Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue is proper in this court pursuant to 28 U.S.C. § 1409(a).

**Background**

Unless otherwise noted, the following facts are undisputed.[1] In March of 1993, Nelson

---

[1] Many of the facts set out in Nelson's Statement of Material Facts filed pursuant to Local Bankruptcy Rule 7056-1(A) are deemed admitted because of the inappropriate form of responses by the Debtor. Specifically, the facts in paragraphs 1-9 are deemed admitted because Debtor claims he lacks knowledge to admit or deny

purchased a classic 1970 Boss 420 Mustang for $30,000 from Bob Perkins of Perkins Restoration in Juneau, Wisconsin. Later that year, Nelson brought the Mustang to the Debtor's father, Thomas A. Perto, Sr. ("Perto Sr."), who was then doing business as Classic Restoration Parts, Inc. ("Classic Restoration"), for restoration work. Perto Sr. took the Mustang to Advanced Paint Removal ("Advanced") for paint work to be paid for with funds given to him by Nelson. At some point in time, Classic Restoration dissolved and Nelson lost contact with Perto Sr. and lost track of the Mustang as well as the funds he gave Perto Sr. to pay Advanced. In 2007, Nelson learned a number of disturbing things about his Mustang's whereabouts. He learned that Perto Sr. failed to pay Advanced for the paint work, which caused Advanced to obtain a mechanic's lien title to the Mustang.[2] When Perto Sr. eventually paid the paint bill, Advanced gave him the mechanic's lien title and he regained possession of the Mustang. After Perto Sr. passed away, his son, the Debtor (who apparently took over his father's business), sold the Mustang to Christopher Lemp for $45,000 using the mechanic's lien title.

Shortly after learning these things, Nelson filed a Complaint in Replevin against the Debtor,

---

them. Such a response does not effectively create a genuine issue of fact and the fact asserted can be deemed admitted. See Karazanos v. Madison Two Assocs., 147 F.3d 624, 626 (7th Cir.1998); Williams v. Elvyea, 163 F.Supp.2d 992, 994 (N.D. Ill. 2001). In addition, rather than directly admitting or denying the facts set out in paragraphs 10 and 13-17, the Debtor responded with tangential unsupported factual and legal arguments. Such responses are likewise ineffective to create a genuine issue of fact and the fact can be deemed admitted. See Fed.R.Civ.P. 56(e) made applicable herein by Fed. R. Bank. P. 7056; Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec, 529 F.3d 371, 382 n. 2 (7th Cir. 2008); Knoblauch v. DEF Express Corp., 86 F.3d 684, 689 (7th Cir. 1996). The responses to the remaining paragraphs in the Statement of Material Facts were proper.

[2] Nelson explains in his Affidavit in Support of Motion for Summary Judgment (the "Nelson Affidavit") that in accordance with a "common practice among classic car collectors," when he purchased the Mustang he did not register the title, but kept it and the Mustang's engine in his possession. Nelson alleges in the Complaint that the customary practice is to register the title when a classic car is restored and "road ready."

Gregg Straley, f/d/b/a Advanced, and Lemp in the Circuit Court of DuPage County, Illinois (the "State Court") to recover the Mustang (the "DuPage County Lawsuit"). Nelson later dropped the replevin claim and filed an amended complaint for conversion against the Debtor.[3] On March 17, 2010, an arbitration hearing was held in the DuPage County Lawsuit, at which both Nelson and the Debtor appeared and testified. After hearing the evidence, the arbitration panel entered an award in favor of Nelson and against the Debtor in the amount of $50,000 (the "Arbitration Award"). The Debtor did not file an objection to the Arbitration Award, and on April 21, 2010, the State Court entered an Order of Judgment on Arbitration Award in favor of Nelson and against the Debtor ("Judgment on Arbitration Award").

On July 7, 2010, the Debtor voluntarily filed a chapter 7 petition. Nelson filed an adversary complaint against the Debtor asking this court to determine that the judgment debt to him is nondischargeable pursuant to section 523(a)(2) of the Bankruptcy Code (the "Complaint").

After the Debtor filed an answer to the Complaint, Nelson filed this motion for summary judgment. He argues that he is entitled to judgment on the Complaint as a matter of law because the Debtor is precluded pursuant to the doctrine of collateral estoppel (issue preclusion) from relitigating the issues that were decided against him by the arbitration panel in the DuPage County Lawsuit. Alternatively, Nelson contends that summary judgment is appropriate based on the pleadings, depositions, and materials submitted with the summary judgment motion.

Pursuant to Rule 56(a), "a party may move for summary judgment, identifying each claim or defense – or part of each claim or defense – on which summary judgment is sought." Fed. R. Civ.

---

[3] Nelson explains that because he was unable to show that Lemp had knowledge of Nelson's ownership interest in the Mustang, he dismissed the replevin claim and paid Lemp $50,000 for the car.

P. 56(a), made applicable herein by Fed. R. Bankr. P. 7056. Summary judgment is appropriate:

> "if the movant shows that there is no genuine dispute as to any material fact." Fed.R.Civ.P. 56(a). The party moving for summary judgment "always bears the initial responsibility" of showing "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once "a properly supported motion for summary judgment is made," the nonmoving party bears the burden to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (internal quotation marks and citation omitted). Notably, any party asserting that a fact is or is not genuinely disputed must cite "to particular parts of materials in the record," or show that "an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1). Thus, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see also Cleveland v. Porca Co.,* 38 F.3d 289, 295 (7th Cir.1994). Additionally, a "court need consider only the cited materials." Fed.R.Civ.P. 56(c)(3).

Seng-Tiong Ho v. Taflove, 2011 WL 2175878, at * 4 (7th Cir. Jan. 6, 2011). Importantly, "even where many or all of the material facts are undisputed, the court still must ascertain that judgment is proper as a matter of governing law." Johnson v. Gudmundsson, 35 F.3d 1104, 1112 (7th Cir. 1994) (citations omitted).

In the Complaint, under the heading "Objection to Discharge Pursuant to 11 U.S.C. § 523(a)(2)," Nelson quotes the provisions of section 523(a)(2) and then alleges that the "debt should be determined to be nondischargeable under these provisions as it pertains to a debt incurred by [the Debtor] in connection with the conversion and sale of Nelson's classic Mustang vehicle." (Complaint ¶ 27) Specifically, according to Nelson, "*[b]y falsely representing* to Lemp that the [Mustang] was his own and selling the [Mustang] to Lemp, [the Debtor] wrongfully converted the [Mustang] of Nelson and received payment from Lemp for the [Mustang] that belongs to Nelson." (Id. at ¶ 23) (*emphasis supplied*). It appears that Nelson may be asserting in his Complaint a claim for nondischargeability based on representational fraud pursuant to section 523(a)(2)(A).

4

Indeed, the prayer for relief in Nelson's Complaint is pinned on section 523(a)(2) although the allegations seem to suggest a claim for nondischargeability based on conversion which is typically the province of section 523(a)(6). The lack of precision in the Complaint may not be particularly problematic at the pleading stage because Rule 8(a)(2), "generally requires only a 'short and plain' statement of the plaintiff's claim." Skinner v. Switzer, 131 S.Ct. 1289, 1296, 179 L.Ed.2d 233 (2011). Accordingly, at the pleading stage, the plaintiff "need not pin [his] claim for relief to a precise legal theory," id., and specifying an incorrect legal theory is not fatal. Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1078 (7th Cir. 1992). When the plaintiff moves for summary judgment, however, he has to identify the claim on which he seeks judgment, and show that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law, all of which necessarily entails more precision in identifying the legal theory of the claim.

In his summary judgment motion Nelson identifies his claim as one seeking nondischargeability of debt for money, property, services, or credit obtained by a representational fraud. Such a claim is governed by section 523(a)(2)(A), which provides,

> (a) A discharge under section 727 of this title . . . does not discharge an individual debtor from any debt —
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by —
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).

As explained by the Seventh Circuit in a recent opinion concerning nondischargeability of debts for money obtained by false representations,

> In order for a creditor to receive an exception from discharge under 11 U.S.C. § 523(a)(2)(A), a creditor must show that (1) the debtor made a false representation or omission, (2) that the debtor (a) knew was false or made with reckless disregard for the truth and (b) was made with the intent to deceive, (3) upon which the creditor justifiably relied.

Ojeda v. Goldberg, 599 F.3d 712, 716-17 (7th Cir. 2010) (citations omitted).

**Request for Summary Judgment Based on Issue Preclusion**

The court will first address Nelson's argument that the Debtor is precluded from arguing that the debt was not obtained by a false representation. The order sought to be given preclusive effect was entered by an Illinois State Court. The court must therefore apply the Illinois law of collateral estoppel. Brokaw v. Weaver, 305 F.3d 660, 669 (7th Cir. 2002). "Under Illinois law, collateral estoppel requires that: (1) the issues decided in the prior adjudication are identical to issues presented for adjudication in the current proceeding; (2) there be a final judgment on the merits; and (3) the party against whom estoppel is asserted was a party or in privity with a party in the prior action." Id. (*quoting* Kalush v. Deluxe Corp., 171 F.3d 489, 493 (7th Cir. 1999)).

Illinois law recognizes that confirmed arbitration awards have the same collateral estoppel effect as final judgments. In re Bozovic, 2004 WL 1905355, at * 4 (Bankr. N.D. Ill. Aug. 24, 2004)(citations omitted); *see also* Goodman L., Nichols Ill.Civ. Prac. Alternative Disp. Resol. § 6:24 (2011). This is so because when parties agree to submit to binding arbitration "they bargain for finality." First Health Group Corp. v. Ruddick, 393 Ill. App. 3d 40, 331 Ill.Dec. 971, 911 N.E.2d 1201, 1209 (2009) (*citing* Yorulmazoglu v. Lake Forest Hospital, 359 Ill.App.3d 554, 564, 295 Ill.Dec. 887, 834 N.E.2d 468 (2005)); *see also* IDS Life Ins. Co. v. Royal Alliance Assoc., Inc., 266 F.3d 645, 651 (7th Cir. 2001) (Court noted that "[a]lthough res judicata and collateral estoppel usually attach to arbitration awards . . . they do so (if they do so) as a matter of contract rather than

6

as a matter of law.").

"To determine whether collateral estoppel is applicable . . . the court must examine the record, including the pleadings, evidence submitted, and any findings of the arbitrator." BEM I, LLC v. Anthropologies, Inc., 2000 WL 1849574, at * 11 (N.D. Ill. Dec. 15, 2000) (*quoting* Peregrine Financial Group, Inc. v. Martinez, 305 Ill.App. 3d 571, 578, 712 N.E.2d 861, 867 (1st Dist. 1999)). Whether to apply collateral estoppel is in the sound discretion of the court. Id.

Here, it appears that the DuPage County Lawsuit may have been referred to arbitration, not by contract, but in accordance with Local Court Rules mandating that lawsuits seeking less than $50,000 are to be referred to arbitration. *See* Rule 13.02 of the Rules of the Circuit Court of the 18th Judicial Circuit. It is likely that confirmed arbitration awards resulting from those procedures are also entitled to preclusive effect, although the court need not decide that issue because assuming such judgments are given preclusive effect, Nelson has not shown for summary judgment purposes that this Judgment on Arbitration Award should be given that effect.

First, by providing an unauthenticated copy of an unsigned Judgment on Arbitration Award, he has not adequately established that the judgment was indeed entered by the State Court. In considering a motion for summary judgment, the court must insist that the evidence on which the movant relies is competent evidence of a type that is admissible at trial. *See* Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). Accordingly, if a movant relies on a document, such as a court order, it must be properly authenticated, either through self-authentication such as certification pursuant to Fed. R. Evid. 902 or another method of authentication pursuant to Fed. R. Evid. 901. *See* Smith v. City of Chicago, 242 F.3d 737, 741 (7th Cir. 2001) (*quoting* Woods v. City of Chicago, 234 F.3d 979, 988 (7th Cir. 2000))("[the] court may consider any material that would

7

be admissible or usable at trial, including properly authenticated and admissible documents or exhibits.").

The copy of the Judgment on Arbitration Award attached to the Nelson Affidavit was not certified, so it was not self-authenticated pursuant to Fed. R. Evid. 902. Authentication under Fed.R.Evid. 901(a), "requires 'evidence to support a finding that the matter in question is what its proponent claims.'" Smith, 242 F.3d at 741 (*quoting* United States v. Boyd, 208 F.3d 638, 644 (7th Cir. 2000)). The only evidence here to support a finding that the Judgment on Arbitration Award is what Nelson claims is the statement in his affidavit that a judgment was entered and that judgment is attached to his affidavit. There is no assertion for the Debtor to admit or deny that the Judgment on Arbitration Award is authentic. In short, the unsigned, unauthenticated copy of the Judgment on Arbitration Award in this record would not be admissible at trial, so the court cannot consider it in this context. *See* In re Rodriquez, 2011 WL 2119008, at * 2 (D.N.M. May 27, 2011).

Even if the court were to ignore the inadmissibility of the Judgment on Arbitration Award, Nelson has not demonstrated that the arbitration panel decided the identical issues involved in this Complaint. In his summary judgment papers, Nelson only provided copies of the State Court complaint, the one-page preprinted form Arbitration Award that merely states that an award is entered against the Debtor in the amount of $50,000 plus costs in the amount of $552.50, and the one-page form Judgment on Arbitration Award, which as noted, is unsigned and contains a handwritten interlineation that the judgment is "based on conversion based on false representations." There are no findings in either the award or the judgment and no record of the proceedings was provided. The court cannot conclude as a matter of law that the identical issues involved in this proceeding were decided in the DuPage County Lawsuit.

For these reasons, Nelson has not convinced this court that there is no genuine issue that a final judgment was entered that could be given preclusive effect. The court will now address Nelson's alternative argument that he is entitled to judgment as a matter of law based on the pleadings and other materials which can be considered on summary judgment.

**Request for Summary Judgment on the Pleadings and Other Materials**

For this argument, Nelson cites to an excerpt from deposition testimony which to him indicates that the Debtor admits that he knew he did not own the Mustang when he sold it to Lemp. Based on that admission, Nelson argues that the Debtor must have, "represented to Lemp that he was the owner of the [Mustang] with the right to sell it when he knew that the mechanics lien title upon which he relied was obtained without the knowledge or consent of the actual owner, Nelson." (Plaintiff's Reply Memorandum on Motion for Summary Judgment, p. 4). Fatal to the motion seeking judgment on a section 523(a)(2)(A) false representation claim, however, is that Lemp is not the creditor holding the claim that is sought to be discharged. The Debtor's debt to Nelson was not for money, property, services, or credit obtained by a false representation made to Nelson, the creditor. In addition, to be successful on a 523(a)(2)(A) claim predicated on a false representation, Nelson must show, among other elements, that the creditor, *i.e.*, Nelson (not Lemp) justifiably relied on the false misrepresentation. See Field v. Mans, 516 U.S. 59, 73-75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). In short, Nelson has failed to show that there is no genuine issue that the Debtor's debt to him was for money, property, services, or credit obtained by the Debtor through a false representation on which the creditor Nelson relied to warrant a declaration of nondischargeability under section 523(a)(2)(A).

Rather than a debt for money, property, services, or credit obtained by a false representation,

what appears to have happened here is the incurrence of a debt for injury to property attributed to a possibly tortuous conversion, which is typically understood to mean an intentional exercise of dominion or control over someone else's property that seriously interferes with the owner's property rights, justly requiring the payment of full value to the owner. *See* Restatement (Second) of Torts § 222A (1965); 18 Am.Jur.2d Conversion § 1; In re Thebus, 108 Ill.2d 255, 260, 91 Ill.Dec. 623, 483 N.E.2d 1258 (1985). A conversion may, depending on the circumstances, constitute a willful and malicious injury to property of another within the purview of section 523(a)(6) of the Bankruptcy Code. *See* In re Vaccaro, 2010 WL 4053914, at * 7-8 (Bankr. N.D. Ill. 2010). Indeed, it has been noted, based in part on legislative history, that a cause of action under 523(a)(6) "subsumes" a claim for willful and malicious conversion. In re Schwartz, 36 B.R. 355, 358 (Bankr. E.D.N.Y. 1984); In re Guy, 101 B.R. 961, 979-80 (Bankr. N.D. Ind. 1988) (*quoting* 124 Cong.Rec., H11096 (Daily Ed. Sept. 28, 1978); S17412 (Daily Ed. Oct. 6, 1978); Reprinted in 4 *Norton Bankruptcy Law and Practice, Legislative History*, § 523, p. 404-405 (Callaghan & Co. 1983)).

It may be that the factual allegations in Nelson's Complaint plausibly state a claim for nondischargeability under section 523(a)(6) despite Nelson's pinning that claim to an incorrect legal theory. Moreover, if a section 523(a)(6) claim was not plainly and plausibly stated, there is a possibility that the Complaint could be amended to do so and include a demand for such relief. The issues of plausibility and a possible amendment are not before the court, however.

What is presently before the court is a summary judgment motion identifying the claim as one seeking a determination of dischargeability under section 523(a)(2)(A) and arguing for judgment on that theory. For the reasons stated, Nelson has not met his burden on summary judgment to show that he is entitled to judgment on such a claim.

**Conclusion**

For the reasons stated herein, the Motion of James L. Nelson for Summary Judgment will be denied by separate order.

Date: SEP 29 2011

ENTER:

Susan Pierson Sonderby
United States Bankruptcy Judge