## United Stated Bankruptcy Court, Northern District of Illinois

| Name of Assigned Judge | Susan Pierson Sonderby | Case No. | 10 B 30264 |
|---|---|---|---|
| **DATE** | | **ADVERSARY NO.** | 10 A 01685 |
| **CASE TITLE** | Thomas A. Perto, Jr.; James L. Nelson v. Thomas A. Perto, Jr. | | |
| **TITLE OF ORDER** | Memorandum of Decision | | |

### DOCKET ENTRY TEXT

[For further details see text below.] For the reasons stated herein, the court will enter a judgment declaring the debt to James L. Nelson excepted from discharge under 11 U.S.C. § 523(a)(6).

### STATEMENT

This matter comes to be heard on the Amended Complaint of James L. Nelson ("Nelson") against the debtor Thomas A. Perto, Jr. ("Debtor") to determine dischargeability of debt pursuant to sections 523(a)(2) and (a)(6) of title 11 of the United States Code (the "Bankruptcy Code"). A trial was held and the court makes the following findings of fact and conclusions of law pursuant to Fed. R Civ. P. 52(a), incorporated herein by Fed. R. Bank. P. 7052. For the reasons stated, the court will enter a judgment determining the subject debt nondischargeable.

This court has jurisdiction over this core proceeding to determine dischargeability of a particular debt. 28 U.S.C. § 1334(b); Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois; 28 U.S.C. § 157(b)(2)(I). Venue is proper in this court. 28 U.S.C. § 1409(a).

## STATEMENT

In March of 1993, Nelson purchased a classic 1970 429 Boss Mustang (the "Mustang") for $30,000 from Bob Perkins of Perkins Restoration in Juneau, Wisconsin. Nelson received an assignment of the title to the Mustang, but did not register the title with the Secretary of State's office, preferring instead to wait until the Mustang was fully restored and in operating condition.

Around that time, the Debtor's father was in the business of restoring classic cars and did so under the name of Classic Restoration Parts, Inc. Nelson kept the Mustang's engine and delivered the chassis to the Debtor's father for restoration work, such as detailing the engine compartment, paint work, and the like. Nelson explained that the restoration of the classic Mustang takes a long time given that they are "very technical" cars with more than 300 unique parts. Classic Restoration eventually dissolved, but Debtor's father continued to work on the Mustang in a residential garage.

Nelson periodically visited the Debtor's father at the residential garage while the restoration work was going on. The Debtor, who was then a preteen boy, was present at some of these visits. Although they were not close friends, Nelson and the Debtor's father had more than a business relationship. Nelson's wife babysat the Debtor and his younger sister from time to time.

In or around 1995, the Debtor's father brought the Mustang to Advanced Paint Removal for paint work. Although Nelson had given the Debtor's father money to pay for the paint work, the Debtor's father did not pay the bill. Consequently, Advanced Paint asserted a lien (which the parties refer to as a mechanic's lien) and based thereon eventually obtained a title to the Mustang.

Debtor's father subsequently paid the paid bill and retook possession of the Mustang from Advanced Paint. Advanced Paint released its lien and gave the Debtor's father the title to the Mustang it had obtained based on its lien. Nelson was unaware of these events as he had lost contact with the Debtor's father and became unaware of the whereabouts of the Mustang.

After his father died in 2007, the Debtor, who was now a young adult, searched through his father's belongings and found the mechanic's lien title to the Mustang. The Debtor admitted that he knew at that time that his father had never owned the Mustang; Nelson did. He also knew that his father obtained the mechanic's lien title by virtue of paying off the paint bill. Even though he knew Nelson owned the Mustang, the Debtor advertised it for sale on the Internet. Without notice or consent from Nelson, the Debtor eventually sold it to Christopher Lemp for $45,000, using the mechanic's lien title.

Debtor claims he mistakenly believed that given the passage of time, he could legally sell the Mustang to Lemp even though Nelson owned it. In addition, he claims to have relied upon his father's frequent statements to him that the Mustang could be sold if he ever needed the money.

In December of 2008, Nelson learned of the death of the Debtor's father and the Debtor's sale

## STATEMENT

of the Mustang to Lemp. Nelson brought a replevin action against Lemp and the Debtor in the Circuit Court of the Eighteenth Judicial Circuit, County of DuPage (the "State Court") to recover possession of the Mustang. Nelson settled with Lemp and pursuant thereto paid him $50,000 in exchange for the Mustang. Nelson amended his replevin complaint to recover the amount he paid to Lemp as damages resulting from the Debtor's conversion of the Mustang. The lawsuit was referred to arbitration and the three arbitrators decided in favor of Nelson. On April 21, 2010, the State Court entered judgment on the arbitration award in the amount of $50,000 plus costs of $552.50 against the Debtor and in favor of Nelson (the "Debt").

The question raised by the Amended Complaint is whether the Debt should be excepted from discharge under section 523(a)(2) or (a)(6). At trial, Nelson only sought to prove nondischargeability under 523(a)(6), which excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

In order to prevail on such a claim, the creditor bears the burden by the preponderance of the evidence to show that the debtor: (1) caused an injury to him or his property; (2) acted willfully; and (3) acted maliciously. In re Bauman, 2011 WL 6755973, *11 (Bankr. N.D. Ill. Dec. 23, 2011). Conversion of another's property is an injury within the scope of § 523(a)(6). See COLLIER ON BANKRUPTCY ¶523.12[4] (Alan N. Resnick & Henry J. Sommer eds. 16th ed.).

With respect to whether there is a willful injury, the United States Supreme Court has explained that "[t]he word 'willful' in [section 523](a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (emphasis in original). Accordingly, the creditor must show that the debtor intended the injury itself, not just intended the act that caused the injury. "In other words, the facts must demonstrate that the [debtor] intended the harmful consequences of his actions." Bauman, 2011 WL 6755973 at *12. Injuries that are recklessly or negligently inflicted do not fall within the scope of section 523(a)(6). Id. (*citing* Geiger, 523 U.S. at 64).

The Geiger case involved a physician whose malpractice injured his patient. He prescribed giving her penicillin orally instead of intravenously to treat an injured foot and subsequently ordered the cessation of all antibiotics, which eventually lead to the need to amputate the foot. She obtained a judgment for malpractice, which the doctor sought to discharge in his bankruptcy case.

The patient asked the bankruptcy judge to determine that the debt was excepted from discharge as a willful and malicious injury. The matter made its way to the United States Supreme Court, which concluded that the debt was not for a willful injury because it was not shown that the doctor intended the injury.

## STATEMENT

Although Geiger explains the meaning of a willful injury, it is still unclear what state of mind must be demonstrated. Courts have generally concluded that a creditor can show the requisite willful intent by establishing that the debtor knew that an injury he was intending was substantially certain to result from his actions. Id. In other words, "willfulness can be inferred if the debtor knew injury was 'certain' or 'substantially certain' to occur as a result of the conduct." In re Thoms, 2011 WL 2413221, * 4 (Bankr. N.D. Iowa Jun. 8, 2011), aff'd In re Thoms, 460 B.R. 749 (8th Cir. BAP 2011)(citing In re Patch, 526 F.3d 1176, 1181 (8th Cir. 2008)).

This matter involves conversion, which is generally understood as an intentional exercise or control over someone else's property that seriously interferes with the owner's property rights, justly requiring the payment of full value to the owner. See Restatement (Second) of Torts § 222A (1965); 18 Am.Jur.2d Conversion § 1, In re Thebus, 108 Ill.2d 255, 260, 91 Ill.Dec. 623, 483 N.E.2d 1258 (1985). Not all debts for conversion are for willful and malicious injuries. See COLLIER ON BANKRUPTCY at ¶ 523.12[4].

The Supreme Court in Geiger gave illustrations of conversions that did and did not constitute willful and malicious injuries by briefly comparing two of its prior decisions. "In McIntyre v. Kavanaugh, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916), a broker 'deprive[d] another of his property forever by deliberately disposing of it without semblance of authority.'" Geiger, 523 U.S. at 63. In contrast, in Davis v. Aetna Acceptance Co., 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934), the conversion was merely technical because a car dealership sold a car without first notifying its financier in accordance with an established ordinary course of business between the dealer and the financier. Id. at 64. The practice was to sell the cars and then notify and pay the financier. The practice established that although the assumption of dominion over the car was unauthorized it was nonetheless done without willfulness or malice.

As for the malice element required under section 523(a)(6), conduct is "malicious" if it is undertaken "in conscious disregard of one's duties or without just cause or excuse." In re Thirtyacre, 36 F.3d 697, 700 (7th Cir.1994). To demonstrate malice under section 523(a)(6), the creditor must prove that the debtor (1) intentionally committed a wrongful act, which (2) caused injury to the Plaintiff, and (3) was done without just cause or excuse. See In re Basel Van Aswegen, 366 B.R. 850, 869 (Bankr. N.D. Ill. 2007).

Here, the evidence has shown that the Debtor knew that his father never owned the Mustang. Nelson did. Notwithstanding that knowledge, the Debtor sold the Mustang to a third party without notifying Nelson and obtaining his consent. Moreover, the Debtor did not notify Nelson after the sale and did not offer to give Nelson any of the proceeds. Indeed, the Debtor admitted the truth of his statements to a police officer that he used the proceeds to pay off his credit card debt. In summary, Nelson has shown by a preponderance of the evidence a willful injury.

## STATEMENT

      The Debtor's explanation that he could sell the Mustang based on the mechanic's lien title and his father's purported prior statements was not credible and even if true could not constitute a just cause or excuse for the Debtor's intentionally committed wrongful act that caused Nelson injury. Nelson has shown by a preponderance of the evidence a malicious injury.

      The court concludes that Nelson has proven by a preponderance of the evidence that the Debtor (1) caused an injury to him or his property; (2) acted willfully; and (3) acted maliciously. Accordingly, the court will enter a judgment declaring the Debt excepted from discharge pursuant to section 523(a)(6) of the Bankruptcy Code.

ENTER:

2-3-12

*[signature]*

Hon. Susan Pierson Sonderby
United States Bankruptcy Judge